**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMIE BROWN, | ) | |
| | ) | Civil Action No. 10 - 682 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | District Judge Donetta W. Ambrose |
| | ) | |
| SUPT. JOSEPH MAZURKIEWICZ; | ) | Magistrate Judge Cynthia Reed Eddy |
| DISTRICT ATTORNEY FOR BEAVER | ) | |
| COUNTY; and the ATTORNEY | ) | |
| GENERAL FOR THE STATE OF | ) | |
| PENNSYLVANIA, | ) | |
| | ) | |
| Respondents. | ) | |


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

### II.   REPORT

Petitioner, Jamie Brown, a state prisoner incarcerated at the State Correctional Institution at Forest, located in Marienville, Pennsylvania has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in connection with his conviction for Murder in the Third Degree with respect to the shooting death of Aliquippa Police Officer, James Naim. For the reasons that follow, the Petition should be denied as without merit.

**A. Relevant Factual and Procedural History**

The facts established at trial show that Officer Naim was on routine foot patrol in the Linmar Housing Plan when Brown approached him from the rear firing a nine millimeter handgun. Two bullets struck the Officer in the head killing him instantly. Testimony established that Brown, who was well known to the police, told several people that he was going to kill a police officer to set an example and earn respect. Brown and Acey Taylor II were charged with homicide and criminal conspiracy to commit homicide in connection with Naim's death. Taylor was acquitted of all charges and Petitioner was found guilty of Murder in the Third Degree. On May 29, 2002, Petitioner received a sentence of from twenty (20) to forty (40) years imprisonment, which was imposed to run consecutive to any previously imposed sentences.

Petitioner filed a Notice of Appeal and new counsel was appointed for the purposes of appeal. In his Concise Statement of Matters Complained on Appeal, Petitioner raised six claims of trial court error and fourteen claims of ineffective assistance of counsel. On October 18, 2002, the trial court filed its Opinion affirming Petitioner's judgment of sentence without addressing Petitioner's ineffective assistance of counsel claims. On February 23, 2004, the Superior Court of Pennsylvania affirmed Petitioner's judgment of sentence and, relying on Commonwealth v. Grant, 572 Pa. 48, 813 A.2d 726 (2002),[1] dismissed Petitioner's ineffectiveness claims without prejudice to his raising them on collateral review. Petitioner filed a Petition for Allowance of Appeal, which was denied by the Supreme Court of Pennsylvania on December 3, 2004.

On June 30, 2005, Petitioner filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. §9541, *et seq*. Petitioner, through appointed counsel, raised

_____

1 In Grant, the Supreme Court of Pennsylvania announced, as a general rule, that claims of

one claim of newly discovered recantation evidence and seventeen ineffective assistance of counsel claims. On February 13, 2008, after addressing all of the grounds raised during the PCRA proceedings, the PCRA court dismissed the Petition. Petitioner filed a timely appeal wherein he raised only the newly discovered recantation evidence claim. On December 31, 2008, the Superior Court affirmed the dismissal of the PCRA Petition considering only the one claim raised on appeal. The Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal on August 26, 2009.

Petitioner filed his petition for a writ of habeas corpus with this Court on May 19, 2010 wherein he raises the following claims.

GROUND ONE: (A) DUE PROCESS ISSUES:

1.      The court erred by permitting inherently prejudicial symbols of mourning in the courtroom, that being black bands over badges being worn by police officers and the victim's widow throughout the trial, potentially prejudicing Brown.

2.      The court erred in not limiting re-direct examination of State Trooper Paul Radatovich to matters drawn out or unfair inferences resulting from cross-examination.

3.      The court erred by not questioning jurors as to whether they had seen Brown's initials upon Court Exhibit No.2. before denying mistrial motion.

4.      The court erred by not examining and determining the legitimacy of defense witness Derrick Cottman's Fifth Amendment Claim of Privilege before determining whether immunity was appropriate, thereby denying Brown his right to compulsory process.

5.      The court erred by issuing an inadequate cautionary instruction, in violation of Pa.R.E. 404(b)(1), following defense witness Anthony McClure's testimony that Brown had a reputation as a shooter.

---

ineffective assistance of counsel should be raised for the first time in a collateral proceeding.

6.    The court erred in not determining if jurors were subjected to outside influences when it had been revealed during jury deliberations that the jury foreman was keeping notes of the trial on his computer.

GROUND ONE: (B) INEFFECTIVE ASSISTANCE OF COUNSEL ISSUES:

7.    Counsel was ineffective by failing to argue the potential for prejudice resulting from the victim's widow and police officers wearing inherently prejudicial symbols of mourning, that being black bands on badges, throughout the trial.

8.    Counsel was ineffective by failing to object to evidence of other crimes, wrongs or acts of Brown, in violation of Pa. R. E. 404(b)(1), that being Brown moving .10-12 firearms the day of the homicide.

9.    Counsel was ineffective for failing to object to evidence of other crimes, wrongs or acts of Brown, in violation of PA.R.E. 404(b)(1), that being Brown threatening a witness.

10.    Counsel was ineffective by failing to object to State Trooper Donald Neill's testimony as to inadmissible character evidence and to improper bolstering of the credibility of eyewitness Darnel Hines.

11.    Counsel was ineffective for not objecting and requesting a mistrial when State Trooper Donald Neill broke redaction, thus denying Brown's Sixth Amendment right to confrontation.

12.    Counsel was ineffective for failing to object to evidence of other crimes, wrongs or acts of Brown, in violation of PA. R. E. 404(b) (1), that being Brown admitting to homicide, preparing to flee and convincing Commonwealth witness Joseph Kirkland to create a distraction following the homicide.

13.    Counsel was ineffective by failing to protect "Brown's Sixth Amendment right to confrontation in her Motion for Mistrial by not requesting that jurors be questioned as to broken redaction after Court Exhibit No.2 was placed before the jury with Brown's initials upon it.

14.    Counsel was not adequately prepared for trial and denied Brown his Sixth Amendment right to confrontation by not examining Commonweal Exhibit No. 47, now Court Exhibit No. 2 prior to trial.

15.    Counsel was ineffective by permitting Brown's alibi to be discredited during the Commonwealth's case in chief.

16.     Counsel was not adequately prepared for trial by not procuring an expert witness to testify as to eyewitness Darnell Hines' vision problems.

17.     Counsel was ineffective by failing to proffer exculpatory evidence and insist the court inquire into the legitimacy of defense witness Derrick Cottman's Fifth Amendment claim of privilege before determining if immunity was appropriate, thus denying Brown's right to compulsory process.

18.     Counsel was ineffective by eliciting evidence of other crimes, wrongs or acts of Brown in Brown's case is chief, in violation of PA.R.E. 404(b)(1), that being Brown's prior arrest for a double homicide, failing to timely object, and then not requesting an appropriate cautionary instruction.

19.     Counsel was ineffective by not requesting a mistrial and argue [sic] that the court must determine if the jurors had been subjected to outside influences when it had been discovered during jury deliberations that the jury foreman was keeping notes of the trial on his computer.

20.     Counsel was ineffective [for] not requesting a jury instruction regarding paid informants with respect to Commonwealth witness Joseph Kirkland.

[21.]    Trial counsel was ineffective in advising defendant not to testify in his defense solely based on his prior record.

[22.]    Trial counsel was ineffective for failing to admit into evidence particular phone records from-the day in question.

[23.]    Trial counsel was ineffective for failing to present evidence offered by a third party, Deandre Moon, to refute Commonwea1th witness Kirkland's testimony.

GROUND TWO:  AFTER DISCOVERED EVIDENCE

[24.]    An eyewitness for the prosecution, Ms. Lee, admitted she lied when she testified that Petitioner told her that he shot the victim.  This was presented as After Discovered Evidence, which the PCRA Court did not agree with, as well as the Superior Court.

GROUND THREE:  ACTUAL INNOCENCE

[25.]  Petitioner is legally and factually innocent of the death of the victim in this case.  Petitioner did not commit this crime.  There is insufficient evidence to demonstrate Petitioner committed this crime.

GROUND FOUR NEWLY DISCOVERED EVIDENCE

[26.]  Robert Gilbert identifies Petitioner's co-defendant as the person fleeing the crime scene, and that person fleeing with co-defendant was NOT Petitioner.

## B. Standards Governing Federal habeas Corpus Review

1.  Exhaustion Requirement

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief.  To comply with the exhaustion requirement, a state prisoner first must have "fairly presented" his constitutional and federal law issues to the state courts through direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review.  *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  To "fairly present" a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.  McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999).  A petitioner can "fairly present" his claim through: (a) reliance on pertinent federal cases; (b) reliance on state cases employing constitutional analysis in like fact situations; (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.  *Id*. At 260.  Even if a state court refuses to consider the claim on procedural grounds, it is still exhausted as long as the state court had the opportunity to address it.  Bond v.

<u>Fulcomer</u>, 864 F.2d 306, 309 (3d Cir.1989);

In addition, in order to exhaust his claims, a habeas corpus petitioner must "properly present" his claims to the state courts. In this regard, a petitioner must invoke "one complete round" of the applicable State's appellate review process, thereby giving the courts of that State "one full opportunity" to resolve any issues relevant to such claims. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999) (holding that a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion would be considered satisfied). The petitioner has the burden of establishing that exhaustion has been satisfied. <u>Ross v. Petsock</u>, 868 F.2d 639, 643 (3d Cir. 1989); <u>O'Halloran v. Ryan</u>, 835 F.2d 506, 508 (3d Cir. 1987).2

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. <u>Christy v. Horn</u>, 115 F.3d 201, 206 (3d Cir. 1997); <u>Doctor</u>, 96 F.3d at 681; <u>Carter v. Vaughn</u>, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall <u>not</u> be deemed to have exhausted state remedies, however, if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

2.	<u>Procedural Default Doctrine</u>

---

2  On May 9, 2000, the Pennsylvania Supreme Court issued In re: Exhaustion of State Remedies in Criminal and Post Conviction Relief Cases, No. 218 Judicial Administration Docket No. 1 (Order 218), which provides that direct criminal appellants and PCRA petitioners need not file petitions for allowance of appeal in order to exhaust all "available" state remedies for habeas corpus purposes. Order 218 applies only prospectively and it has no application to cases involving petitioners whose time for seeking discretionary review had already expired prior to May 9, 2000. <u>Wenger v. Frank</u>, 266 F.3d 218, 226 (3d Cir. 2001).

The mere fact that a petitioner can satisfy the statutory exhaustion requirement on the ground that further state procedures are unavailable does not necessarily mean that a federal court can reach the merits of his or her claims. Claims deemed to have been exhausted because of a state procedural bar are procedurally defaulted, precluding a federal court from proceeding to address them further. In Cone v. Bell, 556 U.S. 449, 129 S.Ct. 1769 (2009), the United States Supreme Court explained:

> It is well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that is independent of the federal question and adequate to support the judgment. In the context of federal habeas proceedings, the independent and adequate state ground doctrine is designed to ensure that the States' interest in correcting their own mistakes is respected in all federal habeas cases. When a petitioner fails to properly raise his federal claims in state court, he deprives the State of an opportunity to address those claims in the first instance and frustrates the State's ability to honor his constitutional rights. Therefore, consistent with the longstanding requirement that habeas petitioners must exhaust available state remedies before seeking relief in federal court, we have held that when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review.

Cone, 129 S.Ct. at 1780 (internal quotations and citations omitted).

Federal habeas corpus review is not barred every time that a state court invokes a procedural rule to preclude its review of the federal claims asserted by a state prisoner. A state procedural rule can preclude federal habeas corpus review only if it is "firmly established" and "consistently and regularly applied" by the State's courts. Kindler v. Horn, 542 F.3d 70, 78 (3d Cir. 2009). Specifically, the state rule must speak in unmistakable terms, and the state courts' refusal to review a petitioner's claim must be consistent with decisions in similar cases. Id. at 79. An "occasional act of grace by a state court in excusing or disregarding a state procedural rule does not render the rule inadequate." Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Amos v. Scott, 61 F.3d 333,

342 (5th Cir. 1995)).  A state rule is adequate to preclude federal habeas corpus review if it is applied

by state courts in "the vast majority of cases."  <u>Dugger v. Adams</u>, 489 U.S. 401, 410, n. 6 (1989).

Moreover, violations of a state's procedural rules may constitute an independent and adequate

state ground sufficient to invoke the procedural default doctrine even where no state court explicitly

has concluded that a petitioner is procedurally barred from raising his claims.  <u>Glass v. Vaughn</u>, 65

F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996).  A petitioner whose constitutional

claims have not been addressed on the merits due to procedural default can overcome the default,

thereby allowing federal court review, if he or she can demonstrate either:  1) "cause" for the default

*and* "actual prejudice" as a result of the alleged violation of federal law; or 2) failure to consider the

claims will result in a "fundamental miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722,

750 (1991).

3.      <u>Standard of Review for Exhausted (but not Procedurally Defaulted) Claims</u>

In describing the role of federal habeas proceedings, the Supreme Court of the United States,

in <u>Barefoot v. Estelle</u>, 463 U.S. 880, 887 (1983), noted:

> [I]t must be remembered that direct appeal is the primary
> avenue for review of a conviction or sentence.... The role of federal
> habeas proceedings, while important in assuring that constitutional
> rights are observed, is secondary and limited.  Federal courts are not
> forums in which to relitigate state trials.

In 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.

No. 104-132, 110 Stat. 1214, April 24, 1996, (AEDPA), which further "modified a federal habeas

court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to

ensure that state-court convictions are given effect to the extent possible under law." <u>Bell v. Cone</u>, 535 U.S. 685, 693 (2002).

Amended Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C.§ 2254(d).

"Clearly established Federal law" should be determined as of the date of the relevant state-court decision and is limited to the record that was before the state court that adjudicated the claim on the merits.  <u>Greene v. Fisher</u>, ___ U.S. ___, 132 S.Ct. 38 (2011); <u>Cullen v. Pinholster</u>, 563 U.S. ——, 131 S.Ct. 1388, 1398 (2011).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'" <u>Lambert v. Blackwell</u>, 387 F.3d 210, 234 (3d Cir.2004) (quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).  Few state court decisions will be "contrary to" Supreme Court

precedent.  The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of Supreme Court precedent.  A state-court decision 'involves an unreasonable application' of clearly established federal law if the state court (1) identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular ... case; or (2) unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.  Williams, 529 U.S. at 407.

A recent decision of the Supreme Court illustrates the deference that the federal courts must accord to state court decisions.  In Renico v. Lett, ___ U.S. ___, 130 S.Ct. 1855 (May 3, 2010), the Supreme Court reviewed the Court of Appeals for the Sixth Circuit's grant of a writ of habeas corpus to a defendant who was retried for murder following the trial judge's grant of a mistrial after the jury had deliberated for at least four hours following a relatively short, and far from complex, trial.  The Michigan Supreme Court had concluded there was no violation of the Double Jeopardy Clause because the trial court exercised its sound discretion.  The federal district court granted a writ of habeas corpus and the Sixth Circuit affirmed, both concluding that the trial court's declaration of a mistrial constituted an abuse of discretion because there was no manifest necessity.  The Supreme Court reversed.

> It is important at the outset to define the question before us. That question is not whether the trial judge should have declared a mistrial.  It is not even whether it was an abuse of discretion for her to have done so-the applicable standard on direct review.  The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of ... clearly established Federal law."  § 2254(d)(1).

<u>Lett</u>, 130 S.Ct. at 1862.  The Supreme Court further instructed:

> It is not necessary for us to decide whether the Michigan Supreme Court's decision - or, for that matter, the trial judge's declaration of a mistrial - was right or wrong.  The latter question, in particular, is a close one.  As Lett points out, at a hearing before the Michigan Court of Appeals, the state prosecutor expressed the view that the judge had in fact erred in dismissing the jury and declaring a mistrial.   The Michigan Supreme Court declined to accept this confession of error, <u>People v. Lett</u>, 463 Mich. 939, 620 N.W.2d 855 (2000), and in any event - for the reasons we have explained - **whether the trial judge was right or wrong is not the pertinent question under AEDPA.**

*Id*. at 1865, n. 3 (emphasis added).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence.  28 U.S.C. § 2254(e).  Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000).  In determining what implicit factual findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly.  *Id*. (citing <u>Marshall v. Lonberger</u>, 459 U.S. 422, 433 (1982)).  Where the state court fails to adjudicate or address the merits of a petitioner's claims, unless procedurally defaulted, the federal habeas court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact.  <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001).  Petitioner's claims will be reviewed in accordance with the standards set forth above.

### C. Petitioner's Claims

Petitioner's first six claims are exhausted for purposes of this Court's review as they all were presented to all three levels of the state courts in his direct appeal. All of these claims allege violations of Due Process. A claim that one was denied "due process" is a claim that one was denied "fundamental fairness." *See* Riggins v. Nevada, 504 U.S. 127, 149 (1992) ("We have said that 'the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial'"); Lisenba v. California, 314 U.S. 219, 236 (1941) ("The aim of the requirement of due process is . . . to prevent fundamental unfairness"). When reviewing claims alleging the denial of due process, the Supreme Court has cautioned that:

> [i]n the field of criminal law, we have defined the category of infractions that violate 'fundamental fairness' very narrowly based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation. The Bill of Rights speaks in explicit terms to many aspects of criminal procedure, and the expansion of those constitutional guarantees under the open-ended rubric of the Due Process Clause invites undue interference with both considered legislative judgments and the careful balance that the Constitution strikes between liberty and order. . . . [I]t has never been thought that decisions under the Due Process Clause establish this Court as a rule-making organ for the promulgation of state rules of criminal procedure.

Medina v. California, 505 U.S. 437, 443 (1992) (internal quotations and citations omitted).

> Judges are not free, in defining 'due process,' to impose on law enforcement officials their personal and private notions of fairness and to disregard the limits that bind judges in their judicial function. They are to determine only whether the action complained of violates those fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency.

Dowling v. United States, 493 U.S. 342, 353 (1990) (internal quotation and citations omitted).

Moreover, a federal court must keep in mind the standard of review to be applied to allegations of trial error. In this regard, criminal defendants in this country are entitled to a fair, but

not a perfect, trial.  "[G]iven the myriad safeguards provided to assure a fair trial, and taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial," and the Constitution does not demand one.  United States v. Hasting, 461 U.S. 499, 508 (1983) (internal citations omitted).   This focus on fairness, rather than on perfection, protects society from individuals who have been duly and fairly convicted of crimes, thereby promoting "public respect for the criminal process."  Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986).

1.      Symbols of Mourning

Petitioner's first claim is that the court erred by permitting inherently prejudicial symbols of mourning in the courtroom, including black bands being worn by police officers and the victim's widow throughout the trial.     The trial court denied defense counsel's request for an order to remove the black bands based on its conclusion that it is common knowledge that police officers wear such symbols of a fallen comrade and that the practice would have no effect on the trial.   When it appeared that some of the officers were wearing pins with the number 25, which was Officer Naim's badge number, the trial court sustained the objection and directed the attorney for the Commonwealth to take steps to prevent that occurrence.

In its review of this claim, the Superior Court held as follows.

The trial court found that this silent display of mourning did not prejudice Brown's right to a fair trial.  The court held that the armbands worn did not indicate either of the defendants committed the crime; rather, the armbands are a traditional symbol used by members of the police force to honor a fallen officer.

.   .   .

. . . In this case, there was no question that a police officer was murdered; rather, the question was whether either Brown or Taylor committed the crime. The spectators' pins did not speak to whether either defendant murdered the officer; rather, they symbolized that an officer was killed in the line of duty. . . .

. . . The pins and black armbands worn in the instant case reflected no bias or prejudgment toward the defendants.

In fact, the trial court specifically instructed the jury in its charge that their verdict must be based on the evidence and not on any appeal to sympathy or prejudice. There is nothing in the record to support Brown's contention that any of the jurors were prejudiced by the buttons or armbands worn by spectators in the courtroom. Nor is there evidence to presume that the badges exclaimed a specific message other than grief. We find no error in the trial court's decision that a mistrial was unwarranted.

Sup. Ct. Op. Feb. 23, 2004 at pp. 3-5. (hereinafter ECF No. 25-2, pp. 43

As stated above, this Court is required to review Petitioner's claims in accordance with the standard of review set forth in AEDPA. Specifically, in order to be entitled to relief, Petitioner must show that the Pennsylvania Court's decision upholding the denial of a mistrial in this instance was contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States.[3] This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of

_____

3. Some circuit courts of appeals have restricted their review under AEDPA to United States Supreme Court decisions alone. *See, e.g.*, Herbert v. Billy, 160 F.3d 1131, 1135 (6th Cir. 1998) (considering itself barred from examining "lower federal court decisions in deciding whether the state decision is contrary to, or an unreasonable application of, clearly established federal law"). The Court of Appeals for the Third Circuit, however, has concluded that decisions of federal courts below the level of the United States Supreme Court may be helpful to us in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as "helpful amplifications" of that precedent. Moore v. Morton, 255 F.3d 95, 105 (3d Cir. 2001) (quoting Matteo v. Superintendent, SCI Albion, 171 F.3d 877, 890 (3d Cir.) (*en banc*), *cert. denied*, 528 U.S. 824 (1999)).

the doubt." <u>Cullen v. Pinholster</u>, ___ U.S. ___, 131 S.Ct. 1388, 1398 (2011) (internal citations omitted). The petitioner carries the burden of proof. *Id*.

A state court decision fails the "contrary to" prong of AEDPA if the state court reaches a conclusion opposite to the Supreme Court's own conclusion on a question of law or decides the case differently where the Supreme Court was confronted by a set of materially indistinguishable facts. <u>McMullen v. Tennis</u>, 562 F.3d 231, 236 (3d Cir. 2009) (quotation and citations omitted). This Court has not discovered any Supreme Court case that has squarely considered this issue. Consequently, Petitioner cannot show that he is entitled to relief under the contrary to prong of AEDPA.

A state court ruling is considered an "unreasonable application" if the state court unreasonably applies the correct legal rule to the particular facts, unreasonably extends a legal principle to a new context, or unreasonably refuses to extend the principle to a new context where it should apply. <u>Harris v. Ricci</u>, 607 F.3d 92, 96 (3d. Cir. 2010).

Petitioner's first claim is grounded in his right to a fair trial, which is a fundamental liberty secured by the Fourteenth Amendment. Inherent in this right is the presumption of innocence, which is a basic component of a fair trial. To safeguard the presumption, courts must guard against practices that diminish the bedrock requirement that guilt is to be established solely by probative evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. <u>Taylor v. Kentucky</u>, 436 U.S. 478, 485 (1978). Applying these principles, in <u>Estelle v. Williams</u>, 425 U.S. 501, 505 (1976), the United States Supreme Court held that a courtroom practice creating an "unacceptable risk ... of impermissible factors coming into play" violates due process and the defendant's right to a fair trial. Applying this

rule to the facts before it, the Court determined that an accused should not be compelled to go to trial in prison or jail clothing because the constant reminder of the accused's condition implicit in such distinctive, identifiable attire creates an unacceptable risk to the defendant's presumption of innocence. *Id*. at 512.

In Holbrook v. Flynn, 475 U.S. 560, 562 (1986), the Supreme Court considered whether a defendant's due process rights were violated when the courtroom security force was supplemented by four uniformed state troopers sitting in the first row of the spectator's section. Applying the Williams standard, the Court found that the augmented presence of police was held not "inherently prejudicial." *Id*. at 570-72.

In its most recent decision on the subject, the Supreme Court vacated a decision of the Court of Appeals for the Ninth Circuit which held that the state court unreasonably applied clearly established federal law by allowing the victim's family members, in a murder trial, to wear buttons depicting the victim while in the presence of the jury. Carey v. Musladin, 549 U.S. at 75–76 (2006). The Supreme Court reversed finding that there was no clearly established federal law to apply because Williams and Flynn dealt with government-sponsored practices, and Musladin challenged courtroom conduct by private actors. The Supreme Court explained, " 'Given the lack of holdings from [the Supreme Court] regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.' " Musladin, 549 U.S. at 77.

The Supreme Court long has recognized that the conduct of the trial is regulated under the sound discretion of the trial judge, Herring v. New York, 422 U.S. 853, 862 (1975), and the trial

court is in the best situation to intelligently determine if a mistrial is necessary.  Gori v. United States, 367 U.S. 364 (1961.  Moreover, long standing Supreme Court precedent recognizes a judge's ability to mitigate potential prejudice though curative instructions.  For example, in Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974), the Court denied the petitioner's claim for habeas relief noting that, although the prosecutor's statement was improper, it was not so prejudicial that its effect could not be mitigated by a curative instruction.  Finding the trial court had issued a "strong" instruction, twice stating the prosecutor's arguments were not evidence and directing the jury to disregard the offensive statement in particular, the Court held any prejudice had been cured.  *Id*. at 643-44.  *See also* Darden v. Wainwright, 477 U.S. 168, 182 (1986), *reh'g denied*, 478 U.S. 1036 (1986).  Although there are some occurrences at trial that may be too clearly prejudicial for a curative instruction to mitigate their effect, *see* Bruton v. United States, 391 U.S. 123, 135 (1968) (admission of co-defendant's inculpatory confession too prejudicial to be cured through jury instruction), Petitioner has not made such a demonstration in the instant case.

In its review of this claim, the Superior Court found that the displays of mourning did not prejudice Brown's right to a fair trial as the symbols did not indicate either of the defendants committed the crime; rather, they were a traditional symbol used by members of the police force to honor a fallen officer.  Moreover, the trial court specifically instructed the jury in its charge that their verdict must be based on the evidence and not on any appeal to sympathy or prejudice.

The state court's determination is not contrary to clearly established federal law as there is no Supreme Court opinion with an opposite holding on a question of law.  Nor is there a Supreme Court opinion with materially indistinguishable facts.  Moreover, the Superior Court decision is not an

unreasonable application of clearly established federal law. The controlling precedent provides that the conduct at issue may not present a risk of impermissible factors coming into play. With respect to the state-sponsored practices, the black armbands and mourning badges merely indicated that the police were mourning a murdered comrade. It was reasonable for the Superior Court to determine that such small signs of mourning, without more, merely expressed sadness; they did not communicate to the jury any message regarding the guilt or innocence of the accused. With respect to the spectators' signs of mourning, Musladin mandates the conclusion that "[g]iven the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court unreasonably applied clearly established Federal law." Musladin, 549 U.S. at 77. Thus, Petitioner is not entitled to relief with respect to this claim.

2.    Re-direct Examination of State Trooper Paul Radatovich

In his second claim, Petitioner asserts that the trial court erred in not limiting re-direct examination of State Trooper Paul Radatovich. In its review of this claim, the Superior Court found as follows.

> Next, Brown contends that he was prejudiced by the trial court's failure to limit the re-direct examination of Trooper Paul Radatovich ("Radatovich"), over the objection of defense counsel. We find no merit to this argument.
>
> Radatovich was called by the Commonwealth to testify about an interview with Brown's former paramour, Rayette Lee, regarding Brown's threats to kill a police officer. At no time on direct did the Commonwealth elicit any mention of a Commonwealth witness named Kyle Goosby ("Goosby"). Goosby had previously testified at trial that he heard Brown's threats concerning his intention to kill a police officer to set an example.
>
> On cross-examination, Radatovich was asked by Brown's counsel if he was

the first officer to interview Goosby; Radatovich stated he was not. Brown's counsel then asked Radatovich when his interview with Goosby occurred; the trooper responded that he had conducted such an interview on March 20, 2001.

The Commonwealth then conducted a re-direct examination and began to ask Radatovich questions about his interview with Goosby; defense counsel objected, arguing that questions about the interview were beyond the scope. The trial court ruled that defense counsel had opened the door to this line of questioning and permitted the Commonwealth's questions. On re-direct examination, Radatovich then testified that Goosby told him:

> that on a number of occasions Brown had approached him and told him he was going to kill a police officer, that first he didn't believe him, he thought he was just talking, and to quote Goosby, 'even the Corleones don't kill police officers: On one occasion a week or so before this occurred he (Brown) said it with such emotion that Goosby stood back. He couldn't believe what he was saying. He really felt a chill to his bone. He believed Brown was sincere when he said, to quote Goosby, 'he had to set an example. He had to get his respect.'

Notes of testimony, 4/30/02 at 548-549.

The scope of re-direct examination is largely within the discretion of the trial court. Commonwealth v. Dreibelbis, 493 Pa. 466, 479, 426 A.2d 1111, 1117 (1981). Additionally, when a party raises an issue on cross-examination, there is no abuse of discretion when the court permits re-direct on that issue in order to dispel any unfair inferences. Id.

Brown now contends that the court erred by allowing inadmissible and prejudicial hearsay statements of Goosby through the testimony of Radatovich. Brown, however, did not lodge a hearsay objection; rather, he objected to the testimony stating it was beyond the scope of cross-examination. Thus, we find that Brown is now precluded from arguing that the testimony is inadmisssble hearsay, and we find no error in the trial court's ruling.

As noted by Respondents, Petitioner's second claim is based upon an alleged misapplication of Pennsylvania law. In his state court briefs, Petitioner raised this issue solely in terms of trial court error; he cited to no federal or constitutional authority in support of his claim  As a result, the

Pennsylvania courts reviewed his claim under Pennsylvania law without any analysis of constitutional principles.

It is well known that a state prisoner like Petitioner may not be granted federal habeas corpus relief unless he demonstrates that he is in custody in violation of the United States Constitution or federal law. *See* 28 U.S.C. § 2254(a). *See also* Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir.), *cert. denied*, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir.), *cert. denied*, 502 U.S. 902 (1991). Thus, mere violations of state law or procedural rules cannot provide the basis for federal habeas relief absent a deprivation of constitutional magnitude. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 253 (3d Cir. 1991), *cert. denied*, 505 U.S. 1223 (1992). Because Petitioner's second claim is premised upon a violation of an evidentiary rule that is provided for under Pennsylvania law, it does not assert a viable basis for federal habeas corpus relief.

Moreover, Petitioner has failed to satisfy the exhaustion requirement in 28 U.S.C. § 2254 for any constitutional claim he seeks to raise. To this end, a petitioner must have "fairly presented" his habeas claims to all levels of the state courts. Lines v. Larkins, 208 F.3d 153, 159 (3d Cir. 2000), citing 28 U.S.C. § 2254(b); O'Sullivan, 526 U.S. at 848. To "fairly present" a claim for exhaustion purposes, "a petitioner must have presented a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted," McCandless v. Vaughn, 172 F.3d 255, 261 (3d Cir. 1999) (emphasis added), so that they had "a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim," Anderson v. Harless, 459 U.S. 4, 6 (1982) (quoting Picard v. Connor, 404 U.S. 270, 276-77 (1971)). *See also*

Baldwin v. Reese, 541 U.S. 27, 29-34 (2004); Nara v. Frank, 488 F.3d 187, 197-99 (3d Cir. 2007); Tome v. Stickman, 167 Fed. App'x 320, 322-323 (3d Cir. 2006) ("Fair presentation requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court.") (internal citation omitted).

It is not sufficient that all the facts necessary to support the federal claim were before the state courts. Keller v. Larkins, 251 F.3d 408, 413 (3d Cir. 2001). Moreover, a mere "passing reference to a 'fair trial'" is insufficient to put the state court on notice that petitioner is asserting a federal constitutional claim. *Id*. at 415. "If state courts are to be given the opportunity to correct alleged violations of its prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam). Thus, as the Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Id*. at 366. *See also* Baldwin, 541 U.S. at 32 ("ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion, that does so."). *See also* Daye v. Attorney General of New York, 696 F.2d 186, 194 (2d Cir. 1982) (*en banc*).[4]

---

[4] In Daye, the court recognized that the more specifically a right is described, "the more easily alerted a court will be to consider a constitutional constraint." 696 F.2d at 193. By contrast, a claim described in "very broad terms," like the "denial of a fair trial," may not be fairly presented to a state

In McCandless v. Vaughn, 172 F.3d 255 (3d Cir. 1999), our court of appeals was presented with a situation somewhat similar to the one at bar. In McCandless, the victim, Theodore Stebelski, was shot to death in a garage rented by Thomas McCandless. The Commonwealth prosecuted McCandless and another man, Patrick Hartey, for the Stebelski murder. During the trial, the court admitted alleged double hearsay testimony by Stebelski's friend, David Antovich, who had driven Stebelski to McCandless's garage on the day of the crime. Antovich testified that, while he was waiting for Stebelski, an unidentified man told him that "Tommy said to take a ride and come back in five minutes." McCandless, 172 F.3d at 259. The jury found McCandless guilty of first degree murder and he was sentenced to mandatory life imprisonment. His murder conviction was affirmed by the Superior Court on direct appeal and the Pennsylvania Supreme Court denied his application for discretionary review.

Nine years later, he filed a petition for habeas corpus relief. The District Court determined that his double hearsay claim was not fairly presented to the state courts because it was not raised in terms of a constitutional violation. The Court of Appeals agreed.

> McCandless's "double hearsay" claim in state court made no reference to a constitutional or federal right and cited only state cases considering state evidence law without employing any constitutional analysis. McCandless's Pennsylvania Superior and Supreme Court briefs do not assert this claim in "terms so particular as to bring to mind" a constitutional right, nor do they "allege a pattern of facts well within the mainstream of constitutional litigation." To the contrary, this "double hearsay" claim brings to mind a classic evidence issue which is precisely how it was understood by the state courts.

---

court for purposes of exhausting a federal due process claim. *Id*. "Fair trial," after all, is a concept that embraces "many concrete notions," some fundamental and some not; not every event accurately described as "unfair" would violate the defendant's constitutional rights.

*Id.*, at 262 (footnote omitted). Because McCandless was procedurally barred from asserting his double hearsay claim in state court, the Court refused to consider the merits of his claim. *Id.*, at 263.

Like McCandless, Petitioner at bar raised his claim as an evidentiary law challenge; he did not assert a violation of a federal or constitutional right; nor did he assert his claim in terms that bring to mind a constitutional right. Moreover, in his pleadings in the state courts, he cited only Pennsylvania authorities. Because Petitioner did not present a constitutional challenge to the state courts, he has failed to comply with the exhaustion requirement in 28 U.S.C.§ 2254, a necessary prerequisite to habeas corpus review. Moreover, again like McCandless, Petitioner cannot now raise any constitutional challenge associated with the hearsay evidence in the state courts due to the eligibility requirements for obtaining post-conviction relief in Pennsylvania. *See* 42 Pa. Cons. Stat. § 9543(a)(2). Consequently, the procedural default doctrine prohibits this Court from reviewing any constitutional challenge to the testimony at issue in Petitioner's second claim.

In his Memorandum of Law (ECF No. 21), Petitioner claims that he raised a constitutional claim with respect to his second issue in his state court brief because he cited to <u>Commonwealth v. Lewis</u>, 372 A.2d 399 (Pa. 1977), which, in turn, cited to <u>Chambers v. Mississippi</u>, 410 U.S. 284 (1973). He claims that this meets the criteria set forth in <u>Evans v. Court of Common Pleas, Del. County, Pa.</u>, 959 F.2d 1227, 1232 (3d Cir. 1992), wherein the court held that a petitioner may alert the court that he is raising a constitutional claim by:  1) relying on federal cases employing constitutional analysis; 2) relying on state cases employing constitutional analysis; 3) asserting the claim in terms so particular as to call to mind a specific right protected by the Constitution; or 4)

alleging a pattern of facts that is well within the mainstream of constitutional litigation. This argument fails for several reasons.

First, Evans was decided prior to the Supreme Court's opinion in Baldwin v. Reese wherein the Supreme Court held that a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material that does so. Second, in his state brief, Petitioner cited to Commonwealth v. Lewis for the mere proposition that "when a party raises an issue on cross-examination, it will be no abuse of discretion for the court to permit re-direct on that issue . . . *to dispel any unfair inferences*." (ECF No. 25-1, p. 23) (emphasis in original). To this end, Lewis holds as follows.

> We also find no merit in appellant's fifth assignment of error. Appellant there argues that the testimony of a police detective that other persons were eliminated as suspects should not have been permitted. However, appellant himself initiated this subject on cross-examination and this question on re-direct by the Commonwealth was necessary to dispel any unfair inferences arising from appellant's raising of this issue.

Lewis, 472 Pa. at 240, 372 A.2d at 401. Importantly, the Lewis opinion does not discuss the Supreme Court's decision in Chambers v. Mississippi with respect to this claim. That discussion relates to a distinct claim of error raised in Lewis and, as such, could not have alerted the state courts that Petitioner at bar was raising a federal claim with respect to his second issue.

Third, the federal rule of law in Chambers v. Mississippi has no applicability to Petitioner's second claim. In this regard, Chambers recognized that the rights to confront and cross-examine witnesses and to call witnesses in one's own behalf are essential to due process. Chambers, 410 U.S. at 295–96. The Chambers Court emphasized that the denial or "significant diminution" of these

rights "calls into question the ultimate integrity of the fact finding process and requires that the competing interest be closely examined." *Id*. The Supreme Court concluded that Chambers' right to a fair trial was violated where the state court denied him the right call McDonald (a person who made but later repudiated a written confession) as a witness and denied him the ability to introduce the testimony of the three persons to whom McDonald had confessed as inadmissible hearsay. In Petitioner's case, Goosby in fact testified at trial and was subject to extensive cross-examination by defense counsel. Therefore, the rule in <u>Chambers</u> has no application to the facts at bar.

Finally, even if the Court were to assume for the sake of argument that Petitioner fairly presented to the Superior Court a claim that the trial court violated his federal due process rights when it allowed the redirect examination of Radatovich, Petitioner would not be entitled to relief in federal habeas. The harmless error evaluation applicable to such a claim is that which is set forth in <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993), which requires that in order to grant habeas relief a federal habeas court must find that a trial error had a "substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 776 (1946)). *See also* <u>Fry v. Pliler</u>, 551 U.S. 112 (2007). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict, that error is not harmless." <u>O'Neal v. McAninch</u>, 513 U.S. 432, 436 (1995) (quotation marks omitted); <u>Bond v. Beard</u>, 539 F.3d 256, 276 (3d Cir. 2008). The trial court's decision to allow redirect examination as to evidence that simply reiterated what witness Goosby had previously testified to could not have had a "substantial and injurious

effect or influence" on the jury's verdict. Therefore any error was harmless under <u>Brecht</u>. For this

reason, in addition to the reasons discussed above, Petitioner's second claim should be denied.

3.    <u>Trial Exhibit</u>

Petitioner's third claim is that the trial court erred by not questioning jurors as to whether

they had seen Brown's initials upon Court Exhibit No. 2. before denying his motion for a mistrial.

This claim is based on <u>Bruton v. United States</u>, 391 U.S. 123 (1968) and its progeny.

In this regard, <u>Bruton</u> involved two defendants—Evans and Bruton—tried jointly for robbery.

Evans did not testify but the Government introduced into evidence Evans' confession, which stated

that both he and Bruton together had committed the robbery. The trial judge told the jury it could

consider the confession  as evidence only against Evans, not against Bruton. *Id*., at 125. The

Supreme Court held that, despite the limiting instruction, the introduction of Evans' out-of-court

confession at Bruton's trial had violated Bruton's right to confront and cross-examine witnesses as

protected by the Sixth Amendment. Although it recognized that limiting instructions typically will

adequately protect one defendant from the prejudicial effects of the introduction at a joint trial of

evidence intended for use only against a different defendant, the Court noted:

> [T]here are some contexts in which the risk that the jury will not, or cannot, follow
> instructions is so great, and the consequences of failure so vital to the defendant, that
> the practical and human limitations of the jury system cannot be ignored.  Such a
> context is presented here, where the powerfully incriminating extrajudicial statements
> of a codefendant, who stands accused side-by-side with the defendant, are
> deliberately spread before the jury in a joint trial.  Not only are the incriminations
> devastating to the defendant but their credibility is inevitably suspect.  The
> unreliability of such evidence is intolerably compounded when the alleged
> accomplice, as here, does not testify and cannot be tested by cross-examination.

*Id*., at 135–136 (internal quotations and citations omitted).

The Court revisited this issue in <u>Richardson v. Marsh</u>, 481 U.S. 200 (1987), which involved the joint murder trial of Marsh and Williams. The State had redacted the confession of Williams so as to omit all reference Marsh and to omit all indication that anyone other than Williams and a third person had participated in the crime.. The trial court also instructed the jury not to consider the confession against Marsh. As redacted, the confession indicated that Williams and a third person had discussed the murder in the front seat of a car while they traveled to the victim's house. The redacted confession contained no indication that Marsh—or any other person—was in the car. The Supreme Court held that this redacted confession fell outside <u>Bruton</u>'s scope and was admissible (with appropriate limiting instructions) at the joint trial. Specifically, the Court determined "that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Id.*, at 211.

The Court next confronted this issue in <u>Gray v. Maryland</u>, 523 U.S. 185, 195 (1998), where the Court extended <u>Bruton</u> to preclude redactions that replaced a proper name with an obvious blank, the word "delete," a symbol, or other similar identification. The Court reasoned that the obvious deletion may well call the jurors' attention specifically to the removed name.

In its review of this claim, the Superior Court held as follows.

> Brown's third issue is whether the trial court properly denied his motion for a mistrial when a partially unredacted exhibit was displayed to the jury. We find no error.

. . .

Brown motioned for a mistrial following the introduction of Commonwealth's exhibit 47, a photograph of the Linmar Terrace section of Aliquippa. This exhibit had been previously used by the police during the initial interview of Brown's co-defendant, Taylor. Taylor had marked the exhibit indicating where he and others were before, during, and after the shooting. In the center of the exhibit, there was a marking in green ink reading "JB-1 "; this was Taylor's reference to Brown, whom he had implicated in the murder. In a pre-trial motion regarding joinder and its attendant Burton [sic] considerations, the trial court ruled that the exhibit was to eliminate the reference to "JB-1." See Burton [Bruton] v. U.S., 391 U.S. 123 (1968).

We now look at the circumstances surrounding the mistake of showing the unredacted exhibit to the jury. The photograph was introduced at trial during the testimony of Corporal Ray Melder ("Melder"). Melder cut the evidence tape on the exhibit and placed it on the easel, located approximately three feet from the jury. Fully opened, the exhibit was five feet in width by four feet in height. The photograph itself was approximately 30 inches high by 40 inches wide. The photograph had numerous markings on it and had several pieces of paper attached. The mark in question was approximately 8 to 12 inches from the top of the photograph, off from the center. The trial court stressed that the exhibit was only open to the jury for approximately 30 seconds to a minute. The District Attorney noticed the mistake, closed the exhibit, and asked for a recess.

Brown motioned for a mistrial. The prosecution suggested the court interview the jurors to determine what they saw and asked for a cautionary instruction. The defense opposed a cautionary instruction. The court denied Brown's motion for a mistrial and also decided not to question the jurors. The trial court, which observed all of the surrounding circumstances, found the brief and unintentional occurrence did not deprive Brown of a fair trial.

On appeal, Brown argues that the redaction that the court provided with the exhibit was broken, even if for a brief moment, and finds that the court erred in failing to question the jurors before denying his motion for a mistrial. We disagree. As the trial court explained in its opinion, the brief exposure to the exhibit was minimal and nothing further was done to call the jurors' attention to the reference to Brown on the exhibit. The exhibit contained multiple markings and had several pieces of paper attached to it, and there was no indication that the brief exposure to the photograph deprived Brown of a fair trial. We find no error in the trial court's finding that the mark in question did not prejudice the jury. Again, the trial court is in the best position to observe the surrounding circumstances and determine whether this brief occurrence warranted a mistrial.

ECF No. 25-2, pp. 48-51 (some internal citations omitted).

The question for my review is whether the determination of the Pennsylvania Superior Court that there was no abuse of discretion in denying Petitioner's motion for a mistrial was an unreasonable application of clearly established Federal law. Petitioner cites no Supreme Court case clearly establishing the denial of a mistrial based on similar circumstances constitutes a violation of federal fair trial rights. My review of clearly established federal law suggests that it was not. For example, in Greer v. Miller, 483 U.S. 756 (1987), the prosecutor improperly questioned the defendant about his post arrest silence. Defense counsel objected to the question before the defendant could answer. The judge sustained the objection and instructed the jury to ignore the question, but gave no explanation for the ruling. The trial continued without further reference to the defendant's silence after receiving the Miranda warnings. The Supreme Court held that there was no due process violation in these circumstances because "[t]he fact of [the defendant's] postarrest silence was not submitted to the jury as evidence from which it was allowed to draw any permissible inference." *Id*. at 764-65.

Moreover, even assuming that there was a Bruton error, such error was harmless. *Accord* Fogg v. Phelps, 414 Fed. App'x 420, 426-427 (3d Cir. 2011) (applying Brecht harmless error test to alleged Bruton violation). As noted by Respondents:

> The evidence presented at trial showed that, when he was stopped for a traffic violation on January 1 0, 2001, Brown told the officer that he would be seeing the officer again and made a threatening hand gesture suggestive of pointing a gun at the officer's head. Prior to the murder, Brown told Kyle Goosby that he was tired of them "mf'ers" (the police) messing with him and that he was going to kill a police officer to set an example. Brown made a statement to the same effect to Rayetta Lee. Darnell Hines testified that he was directed by another person to see if there was some "dope" near a garbage can. He saw officer Naim walking down the street in front of him and, when the officer reached the end of the sidewalk, Hines saw Brown step out and shoot Officer Naim twice in the head. When Taylor stated that the

officer was not dead, Brown shot him again. A few hours after the murder, Brown told Joseph Kirkland that he had shot a police officer. About two days after the murder, when approached by officers, Brown denied his identity and then tried to flee; when stopped, he again denied being Jamie Brown, admitting his identity only when more officers arrived. State Police investigators later obtained a letter written by Brown telling Marlene Walker how to testify in order to establish an alibi for Brown. Additionally, there was forensic evidence showing that the cause of death was two gunshot wounds to the head as well as testimony from police as to the position of the body and the course of the investigation.

ECF No. 14, pp. 22-23.

Based on this evidence, a brief notation on a photograph indicating that Brown was in the area does not leave me in "grave doubt" as to whether such "error" had a "substantial and injurious" effect on the jury's verdict. Thus, based on the discussion above, the Court finds that Petitioner has not met his burden of showing that he is entitled to habeas corpus relief as to his third claim.

4.    Privilege and Immunity

Brown's fourth claim is that the trial court erred by failing to determine the legitimacy of an assertion of the right against self-incrimination by a defense witness named Derrick Cottman and by not determining whether immunity was appropriate, thereby denying Brown his right to compulsory process. With respect to this claim, the Superior Court held as follows.

Brown appears to allege that the trial court erred by refusing to provide immunity to Derrick Cottman ("Cottman"). Under the statute governing immunity, 42 Pa.C.S.A. § 5947, the requisites are:

(b) Request and issuance.--The Attorney General or a district attorney may request an immunity border from any judge of a designated court, and that judge shall issue such an order, when in the judgment of the Attorney General or district attorney:

(1) the testimony or other information from a witness may be necessary to the public interest; and

> (2) a witness has refused or is likely to refuse to testify or provide
> other information on the basis of his privilege against self-
> incrimination.

42 Pa.C.S.A. § 5947(b).

We have held that "the decision to seek a grant of immunity in any individual case rests within the judgment of the prosecutor. It is up to the executive branch of government to decide when and to whom immunity will be granted." Furthermore, a decision "as to whether immunity should or should not be granted [rests] entirely within the judgment of the Attorney General or District Attorney." Commonwealth v. Johnson, 507 Pa. 27, 31, 487 A.2d 1320, 1321-1322 (1985) (emphasis added).

Brown intended to call Cottman as a defense witness. Before taking the stand, however, he asserted his Fifth Amendment privilege against self-incrimination. The trial court asked the prosecutor if he would seek a grant of use immunity for Cottman, pursuant to 42 Pa.C.S.A. § 5947. The prosecution stated that it would not seek such immunity for Cottman. Accordingly, the trial court was not in a position to grant such an order, absent a request from the Commonwealth.

Relying primarily on Virgin Islands v. Smith, 615 F.2d 974 (3d Cir. 1980), Brown contends that the trial court was obliged to conduct an inquiry as to whether Cottman would have provided exculpatory evidence. If Cottman would have provided such evidence, the court would then be required to determine whether the witness' claim of privilege is legitimate, and if so, the court would have inherent authority to grant, at a minimum, "judicial use immunity." However, recently in Commonwealth v. Champney, _ Pa. _, 832 A.2d 403 (2003), our supreme court recognized that such a proposition has been rejected in all other circuits which have considered the issue and was inconsistent with *dicta* in Pillsbury Co. v. Conboy, 469 U.S. 248 (1983) ("[n]o court has authority to immunize a witness"). Furthermore, Brown has "failed to demonstrate that [Cotman's] testimony would be clearly exculpatory." Champney, supra. Therefore, we find no merit to this issue.

ECF No. 25-2, pp. 51-53.

As recognized by the Superior Court, every federal circuit court, except the Third, has held that courts have no inherent authority to grant a witness use immunity. *See, e.g.*, United States v. Serrano, 406 F.3d 1208 (10th Cir. 2005); United States v. Moussaoui, 382 F.3d at 466 (4th Cir. 2004); United States v. Bowling, 239 F.3d 973, 976 (8th Cir. 2001); United States v. Perkins, 138

F.3d 421, 424 (D.C. Cir. 1998); United States v. Mackey, 117 F.3d 24, 27 (1st Cir. 1997); United

States v. Follin, 979 F.2d 369, 374 (5th Cir. 1992); United States v. Cuthel, 903 F.2d 1381, 1384

(11th Cir. 1990); United States v. Wilson, 715 F.2d 1164, 1173 (7th Cir. 1983); United States v.

Lenz, 616 F.2d 960, 962 (6th Cir. 1980); United States v. Turkish, 623 F.2d at 772-73 (2d Cir.

1980); United States v. Alessio, 528 F.2d 1079, 1081 (9th Cir. 1976). Given that our circuit is the

sole federal authority for the proposition that a trial court has the authority to grant immunity, there is

no clearly established federal law and Brown's claim fails.

Moreover, even under the standard set forth in Government of Virgin Islands v. Smith, 615

F.2d 964, 968-69 (3d Cir. 1980), Petitioner has not shown that he is entitled to relief. The Smith

court, relying on Chambers v. Mississippi, 410 U.S. 284, 294 (1973), recognized the proposition that

criminal defendants possess a due process right to have clearly exculpatory evidence presented to the

jury, at least when there is no strong countervailing systemic interest that justifies its exclusion. In

order to safeguard that right, the Court concluded that, in cases where a defense witness invokes the

Fifth Amendment for fear of self-incrimination, the only way to compel this evidence is to grant

immunity. Thus, the Court held judicially-granted immunity could serve to remedy these types of

due process violations. Smith, 615 F.2d at 971 (citations omitted). However, because of the "unique

and affirmative nature of the immunity remedy and fundamental considerations of separation of

powers, grants of immunity to defense witnesses must be bounded by special safeguards and must be

made subject to special conditions." Id. The Smith court imposed five such conditions, emphasizing

that each must be met before the remedy of judicially-granted immunity is available: 1) immunity

must be properly sought in the district court; 2) the defense witness must be available to testify; 3)

the proffered testimony must be clearly exculpatory; 4) the testimony must be essential; and 5) there must be no strong governmental interests which countervail against a grant of immunity. *Id*. at 972.

As specifically noted by the Superior Court, Brown failed to demonstrate that the proffered testimony would have been exculpatory. Nor did he make any such showing in his Petition before this Court. It is not for the trial court to engage in a fishing expedition is such circumstances. Accordingly, Petitioner is not entitled to habeas corpus relief as to his fourth claim.

5.    <u>Inadequate Cautionary Instruction</u>

In his fifth claim, Petitioner argues that the trial court erred by issuing an inadequate cautionary instruction in violation of the Pennsylvania Rules of Evidence. In its review of this claim, the Superior Court held as follows.

> Next, Brown suggests that the trial court erred by issuing an inadequate cautionary instruction in violation of Pa.R.E. 404(b)(1) following defense witness Investigator Anthony McClure's testimony ("Investigator McClure"). We disagree and find this contention waived.

> Through the testimony of Investigator McClure, Brown's counsel introduced evidence that Brown had previously been arrested for a double homicide for which he was ultimately cleared. However, Investigator McClure testified that Brown had a reputation as a shooter in the City of Aliquippa in the 1990's and that influenced the police officer's opinion at the time of the shooting regarding Brown's culpability. Thereafter, the defense objected and asked for a mistrial.

> The court denied the mistrial, but gave an immediate cautionary instruction:

> Ladies and gentlemen of the jury, you should know the objection posed by Miss Kreisman to the last response provided by the witness has been sustained by the Court. What that means is that the last response that was provided by the witness, that reference should be stricken from your memory, stricken from your consideration as far as your determination in your deliberations on the credibility of this witness.

You will recall, and I will give you a perfect analogy. You will recall that this Court has previously in this case indicated to you that you could consider crimes of *crimen falsi* and you could consider reputation testimony within the community for telling the truth. The reputation testimony that was just immediately before my sustaining the objection that was provided to you relates to other activity within the community and has no place in the trial. The only reputation testimony that you will hear and give consideration to is reputation in the community to tell the truth on matters of importance to the witness.

I trust the jury understands and will heed the Court's cautionary instruction in that regard. With that cross-examination may continue.

Brown claims that the cautionary instruction was unclear and misleading. Brown, however, has waived this contention for appeal purposes as he did not object to the court's cautionary instruction at the time of trial. "Defendant must object to a jury charge at trial, lest his challenge to the charge be precluded on appeaL" Commonwealth v. Corley, 638 A.2d 985, 990 (Pa. Super. 1994), *appeal denied*, 538 Pa. 641, 647 A.2d 896 (1994). Even where alleged error is basic and fundamental, any challenge to an instruction must be initiated in the trial court. *Id*. Defense counsel did not object to or request any elaboration on the cautionary instruction. Such silence can be well interpreted as satisfaction with the efficacy of the instruction. Therefore, Brown's contention is waived.

ECF No. 25-2, pp. 53-55 (some internal citations omitted).

Petitioner is not entitled to relief as to this claim for several reasons. First, he presented this claim to the state courts solely as a violation of state law. Thus, he procedurally defaulted any federal claim with respect to this issue. Moreover, the Superior Court found that the claim was waived because defense counsel never objected to the instruction given to the jury. Petitioner's failure to preserve the claim under state law also constitutes a procedural default.

As stated previously, this federal court may not review a defaulted claim unless Petitioner demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice.

Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded his or her efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. at 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). To show prejudice, a petitioner must demonstrate that the error worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions, not merely that the error created a "possibility of prejudice." Carrier, 477 U.S. at 494.

In his Reply, Petitioner claims that the failure to preserve and exhaust his claims was the result of ineffective assistance of counsel. However, under Pennsylvania law, such ineffective assistance claims must have been exhausted at the earliest opportunity, which would have been during Petitioner's PCRA proceeding. Petitioner's failure to have properly raised his claims there results in procedural default. Edwards v. Carpenter, 529 U.S. 446, 451 (2000). To this end, although Petitioner raised ineffective assistance of counsel claims in his PCRA proceeding, he failed to present them in his Statement of Errors filed pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. This Rule requires an appellant to file a Concise Statement of Errors Complained of on Appeal. The waiver of claims not sufficiently articulated in a Rule 1925(b) statement is an independent and adequate state ground that constitutes a procedural default in federal court. *See* Buck v. Colleran, 115 Fed App'x 526, 528 (3d Cir. 2004) (noting that, because petitioner did not file a motion to supplement his Rule 1925(b) statement or request an enlargement of time to raise the two claims, he was partially at fault and therefore the Superior Court did not err in finding that the claims were waived for failure to comply with Rule 1925); Miles v. Tomaszewski, Civ. No. 04–3157, 2004 WL 2203726, at *3 (E.D. Pa. Sept.14, 2004), *approved and adopted* by 2004 WL

2457732 (E.D. Pa. Oct.27, 2004) (holding that waiver of claims not sufficiently articulated in a Rule 1925(b) statement is an independent and adequate state ground that constitutes a procedural default in federal court).

To the extent that Petitioner contends that his claims were not properly presented to the state court due to the error of PCRA counsel, counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation. Coleman, 501 U.S. at 755. The Supreme Court has determined that neither the Fourteenth Amendment nor the Sixth Amendment require effective assistance of counsel during collateral criminal proceedings. *Id.* at 757. Thus, any attorney error that has led to the default of a petitioner's claims on collateral appeal cannot constitute cause to excuse a default in a federal habeas petition. *Id. See also* Pennsylvania v. Finley, 481 U.S. 551, 558 (1987) (finding that the Constitution does not dictate standard for attorney effectiveness on collateral appeal). As he has failed to allege cause, I need not determine whether he can show prejudice as to this claim.

Where a petitioner cannot make a showing of "cause and prejudice," a federal court may nevertheless consider the merits of his or her unexhausted claims under circumstances in which the failure to adjudicate such claims would result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750. This exception to the procedural default doctrine is based on the principle that, in certain instances, "the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" Murray v. Carrier, 477 U.S. 478, 495 (1986) (quoting Engle v. Isaac, 456 U.S. 107, 135 (1982)). The "prototypical example" of a miscarriage of justice is a situation in which an underlying constitutional violation has led to the conviction of an innocent defendant. Sawyer v. Whitley, 505 U.S. 333, 340

(1992). In that instance, the merits of a petitioner's claims can be considered notwithstanding his or her failure to raise them before the state courts.

In order to avail himself or herself of this exception to the procedural default rule, a petitioner must make a substantial showing that he or she is actually innocent of the crime for which he or she is incarcerated. Schlup, 513 U.S. at 324. "To be credible, such a claim requires [the] petitioner to support his [or her] allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* If this requirement is satisfied, the federal court must consider "whether it is more likely than not that no reasonable juror would have convicted [the petitioner] in light of the new evidence." Hubbard v. Pinchak, 378 F.3d 333, 340 (3d Cir. 2004). This standard "does not merely require a showing that a reasonable doubt [as to the petitioner's guilt] exists in the light of the new evidence, but rather that no reasonable juror would have found the [petitioner] guilty." Schlup, 513 U.S. at 329. "The court's function is not to make an independent factual determination about what likely occurred, but rather to assess the likely impact of the evidence on reasonable jurors." House v. Bell, 547 U.S. 518, 538 (2006). While the petitioner's innocence need not be determined with "absolute certainty" at this "gateway stage," his or her burden is to demonstrate that, in light of the new evidence, it is more likely than not that *any* reasonable juror would have reasonable doubt as to his or her guilt. *Id.*

In the habeas corpus context, a federal court sits to ensure that an individual is not imprisoned in violation of the Constitution and laws of the United States, "not to correct errors of fact." Herrera v. Collins, 506 U.S. 390, 400 (1993). Consequently, a finding of "actual innocence" is not an

independent ground for habeas corpus relief, but rather a "gateway" through which a petitioner can pass to have a federal court consider underlying claims that would otherwise be subject to procedural default. *Id.* at 404. In the absence of new evidence of the petitioner's innocence, the existence of an underlying constitutional violation provides a federal court with no basis for adjudicating a procedurally defaulted claim. Goldblum v. Klem, 510 F.3d 204, 225-226 (3d Cir. 2007). Only after the presentation of *new* evidence may a federal court proceed to consider whether, in light of *all* relevant evidence, it is more likely than not that no reasonable juror would vote to convict the petitioner of the crime for which he or she is incarcerated. House, 547 U.S. at 537-539; Goldblum, 510 F.3d at 225-226.

Petitioner sets forth no new evidence in support of his procedurally defaulted claims. Thus, this federal court is precluded from reviewing them.

6.  Note Taking

Petitioner's sixth claim alleges that the trial court erred by failing to determine whether the jurors were subjected to outside influences when the trial court discovered that the jury foreman was making notes during the trial. The Superior Court decided this claim as follows.

> Several hours after the case had been given to the jury, Juror No.6 approached the tipstaff and stated that the jury was ready to break for the night. He mentioned that he had been taking notes on the trial in the evening after the day in court. He asked the tipstaff if he would be able to bring them with him to deliberation the next day.
> The trial court then addressed counsel and proposed to send the jury back to the hotel. At that time, the court suggested that the tipstaff would inform the juror that it was necessary that any notation in any form must be turned over to the tipstaff. The computer on which the notes were taken and stored would be confiscated from the juror and kept by the court until the end of deliberations. The court also stated it would instruct the jurors again that they were not to be taking notes or using notes during their deliberations. Furthermore, they were not to give any undue weight or

consideration to notes taken; rather, it was their collective memories that they needed to rely upon.

Neither the defense nor the prosecution objected to the aforementioned procedure or offered any further suggestions. Defense counsel did not motion for a mistrial or request an in camera interview with the jurors. Issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.App.P. 302(a); Commonwealth v. Baker, 556 Pa. 427, 728 A.2d 952 (1999). Therefore, this claim is waived.

Furthermore, while it is true that jurors are not permitted to take notes during trial or use notes in the jury room, Commonwealth v. Pierce, 453 Pa. 319, 322, 309 A.2d 371, 372 (1973), the juror involved never had the opportunity to take his notes into the jury room. If a defendant can establish prejudice from such conduct, he is entitled to a new trial. *Id*. In the instant case, Brown has not introduced any evidence regarding the juror's note-taking nor has he established prejudice.

ECF No. 25-2, pp. 55-56.

As with his fifth claim, Petitioner is not entitled to relief as to this claim as he presented this claim to the state courts solely as a violation of state law and his failure to preserve the claim under state law constitutes a procedural default. For the same reasons stated above, he has not set forth any bases to overcome his default of this claim.

Moreover, Petitioner has cited no U.S. Supreme Court case related to this issue, and the Court has found none. Therefore, the decision of the state court cannot be contrary to or an unreasonable application of clearly established federal law. Musladin, 549 U.S. at 75–76 (holding that the absence of clearly established federal law to apply precluded relief under AEDPA. *Accord* Lucas v. Crosby, Civil No. 04-222, 2008 WL 4165288, 37 (M.D. Fla. Sept. 5, 2008).

7-23    Ineffective Assistance of Counsel

In claims 7 through 23, Petitioner sets forth seventeen ineffective assistance of counsel claims. As required under Pennsylvania law, Petitioner raised these claims in his PCRA proceeding

and they were addressed on the merits by the PCRA Court.  As stated earlier, however, he failed to present these issues to the Superior Court on appeal from the denial of his PCRA.  For the same reasons set forth below, Petitioner has procedurally defaulted these claims.  *See* <u>Buck v. Colleran</u>, 115 Fed. App'x 526 (3d Cir. 2004) (holding failure to comply with Rule 1925(b) constitutes a procedural default); <u>Konya v. Meyers</u>, Civil No. 03-4065, 2004 WL 1171730, *3 (E.D. Pa. May 24, 2004) ("due to petitioner's failure to comply with Pennsylvania's Rule 1925(b), petitioner's claims are procedurally defaulted under Pennsylvania law."); <u>Willis v. Varner</u>, Civil No. 03-1692, 2004 WL 1109780, *7 (E.D. Pa. May 13, 2004) ("The Superior Court's conclusion that Petitioner's due process claim was waived for failure to include it in Petitioner's 1925(b) statement is based upon an adequate and independent state procedural rule.").  Again, Petitioner has set forth no bases upon which to overcome his default.  Consequently, he is not entitled to relief as to claims 7 through 23.

24.    <u>After Discovered Evidence</u>

This claim was discussed and adjudicated by the Superior Court as follows.

> Appellant, in his. sole contention, argues that· the trial court erred in denying relief upon the claim that he acquired newly discovered exculpatory evidence, namely the recantation of Rayetta Lee, who had testified on behalf of the Commonwealth at appellant's trial, but subsequently testified at the PCRA hearing that her trial testimony was false.  By way of background to this claim, Rayetta Lee was appellant's former paramour and, at appellant's trial, she testified that; prior to the date of the murder, appellant told her that "[h]e was upset about the police harassing him[,]" and that "[h]e made  a comment that he was going to kill a cop."  At the PCRA hearing, Lee then testified that appellant never stated his intention to kill a police officer, and that she had falsified her prior testimony to punish him for distributing a scandalous picture of her that was eventually shown to her son.

> To obtain relief based upon newly-discovered evidence under the PCRA, appellant ust establish that: (1) the evidence has been discovered after trial and it could·not have been obtained at-or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and

(4) it would likely compel a different verdict. <u>Commonwealth v. Washington</u>, 592 Pa. 698, 715,· 927 A.2d 586, 595-596 (2007) (citations omitted). Here, the record reveals that appellant, at the time of trial, was well aware that Rayetta Lee had allegedly fabricated her testimony at trial, and that her trial-testimony was motivated by vengeance over the disclosure of the scandalous picture. Indeed, at trial, counsel for appellant attempted to impeach lee's testimony during cross examination, and made explicit reference to the scandalous picture appellant had taken and disclosed to others. Therefore, appellant cannot demonstrate that evidence that Lee had falsified her trial testimony, and had an improper motive to testify against him, was discovered after trial or could not have been obtained at or prior to trial through reasonable diligence.

Moreover, our review reveals that Lee's testimony referred only to appellant's statements that he intended to kill an officer because the police had been harassing him. It bears further emphasis that Lee's trial testimony was corroborated by at least one other Commonwealth witness, Kyle Goosby, who testified that appellant stated that he was going to kill a police officer, that he was "tired of them mf'ers [referring to the police] messing with him all the time," and that he had made comments about setting "an example." Finally, following our review of the record, we detect no basis upon which to conclude that the learned President Judge John D. McBride abused his discretion when he concluded that Rayetta Lee's recantation at the PCRA hearing was not credible.[Fn]

Thus, we detect no merit to appellant's contention that he was entitled to relief upon Rayetta Lee's proposed recantation, and affirm the order that denied appellant's requests for post conviction relief.

Fn. It is well settled that:

Recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. There is no less reliable form of proof, especially when it involves an admission of perjury. <u>Commonwealth v. Loner</u>, 836A.2d 125, 135 (Pa. Super. 2003), *appeal denied*, 578 Pa. 699, 852 A.2d 311 (2004) (citation omitted).

ECF No. 25-4, pp. 27-29 (some internal citations omitted) (footnote in original).

In reviewing a state court conviction, a federal habeas court must presume any factual findings made by the state courts to be correct. 28 U.S.C. § 2254(e)(1). This presumption is

particularly important when reviewing the trial court's assessment of witness credibility.  Cotto v. Herbert, 331 F.3d 217, 233 (2d Cir. 2003); Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  On habeas review, the petitioner has the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The trial court determined that Lee's testimony was incredible.  The Superior Court upheld this factual determination.  Petitioner has failed to overcome the presumption of correctness accorded to the factual findings made by the Pennsylvania state courts.  Given the extremely narrow scope of my review, it cannot be said that the trial court's finding was an "unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Consequently, Petitioner is not entitled to habeas relief as to this claim.

25.  Actual Innocence

In his next claim, Petitioner makes the bald assertion that he "is legally and factually innocent of the death of the victim in this case.  Petitioner did not commit this crime.  There is insufficient evidence to demonstrate Petitioner committed this crime."  He requests an evidentiary hearing to make this determination.  Petitioner admits that he did not present this claim to the state courts but asserts that this failure is excused by the ineffectiveness of his trial and direct appeal counsel.

As noted below, however, his  failure to present such an ineffectiveness claim to the PCRA court results in procedural default of this claim.  Again, as noted below, he has failed to show any cause and prejudice to excuse his default.  Moreover, he has failed to meet the miscarriage of justice exception to the procedural default doctrine.  Specifically, he has failed to set forth any new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence—that was not presented at trial to establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Schlup, 513 U.S., at 327.

With respect to his request for an evidentiary hearing, "federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state court proceedings." Cullen v. Pinholster, 131 S.Ct. 1388, 1401 (2011) (citing Williams v. Taylor, 529 U.S. 420, 437 (2000)). AEDPA provides the following limitation before a district court may hold an evidentiary hearing with respect to this claim.

> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> > (A) the claim relies on--
> >
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > >
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. 2254(e)(2). Petitioner has made no such showing, and, therefore, is not entitled to an evidentiary hearing in this matter.

26. Newly Discovered Evidence

In his final claim, Petitioner seeks to introduce "newly discovered" evidence, which, in his view, shows that he was not the person fleeing with co-defendant from the scene of the crime. Specifically, he has attached a statement by Robert Gilbert which states that, after hearing shots fired, Gilbert observed two black males running from the scene: one was Petitioner's co-defendant and the other one was dressed all in black but could only be identified by Gilbert as someone from the Linmar area. Petitioner is not entitled to relief for several reasons. First, Petitioner has failed to allege when he became in possession of this piece of "evidence." Second, contrary to Petitioner's assertion, this evidence does not show that the person fleeing with co-defendant was not Petitioner. And third, Petitioner has offered no explanation why he did not pursue this claim in state court in a second PCRA proceeding upon its discovery.

In this regard, in order to have met the exhaustion requirement, Petitioner should have filed a second PCRA Petition in state court raising after-discovered evidence within 60 days of the date it could have been presented. *See* 42 Pa. Cons. Stat. §9545(b)(1)(ii). When a petitioner would be barred under state law from raising a claim because he failed to comply with a state procedural rule-such as a statute of limitations, the Court of Appeals for the Third Circuit has recognized that it would be "futile" to require the petitioner to return to state court. Under that circumstance, the petitioner is technically excused from having to comply with the exhaustion requirement, but that the claim is procedurally defaulted. *See* <u>Slutzker v. Johnson</u>, 393 F.3d 373, 379-80 (3d Cir. 2004); <u>Crews v. Horn</u>, 360 F.3d 146 (3d Cir. 2004); <u>Lines v. Larkin</u>, 208 F.3d 153, 166 (3d Cir. 2000) ("The equitable principles governing habeas relief will not permit [the petitioner] to create a situation in

which seeking state post-conviction relief is futile, and then invoke that same futility to avoid the exhaustion requirement.").

Because Petitioner did not file a second PCRA petition he procedurally defaulted this claim. There was a state procedure available to him to litigate his claim and when he did not avail himself of that procedure, he foreclosed his ability to receive federal habeas review of that claim. *Accord* Slutzker, 393 F.3d at 379-81 (holding that the failure to raise a Brady violation within the statute of limitations pursuant to the PCRA qualifies as an independent and adequate state grounds to constitute a procedurally defaulted claim). His procedural default may be excused only if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 749-50. He has failed to meet either of these exceptions. Consequently, he is not entitled to relief as to this claim.

### D. Certificate of Appealability

Section 2253 generally governs appeals from district court orders regarding habeas petitions. Section 2253(c)(1)(A) provides that an appeal may not be taken from a final order in a habeas proceeding in which the detention arises out of process issued by a State court unless a certificate of appealability has been issued. A certificate of appealability should be issued only when a petitioner has made a substantial showing of a denial of a constitutional right. 28 U.S.C. ' 2254(c)(2). Here, the record fails to show a violation of Petitioner's constitutional rights. Accordingly, a certificate of appealability should be denied.

### III.    **CONCLUSION**

Based on the discussion above, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied and that a certificate of appealability be denied.

In accordance with the applicable provisions of the Magistrate Judges Act [28 U.S.C. ' 636(b)(1)(B) & (C)] and the Local Rules of Court, the parties shall have fourteen days from the date of the service of this report and recommendation to file written objections thereto. Any party opposing such objections shall have fourteen days from the date on which the objections are served to file its response. A party's failure to file timely objections will constitute a waiver of that party's appellate rights.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

January 11, 2012

Jamie Brown
FA8179
SCI Forest
P.O. Box 945
Marienville, PA 16239-0307